## SAPER v. EMERSON–NEW YORK, Inc.

United States District Court
S. D. New York.
Feb. 26, 1951.

I. Arnold Ross, New York City, for plaintiff.

Gerdes & Montgomery, New York City, W. R. Montgomery and M. Monroe, New York City, of counsel, for defendant.

S. H. KAUFMAN, District Judge.

Plaintiff, a trustee in bankruptcy, sues to set aside alleged preferential payments by the bankrupt to defendant. There has been referred to this Court, for separate trial in advance of the hearing on the merits of plaintiff's claim, a defense to the effect that plaintiff is without capacity to

sue because he is trustee of Charles Bond, individually, whereas the payments involved, it is alleged, were made by a partnership consisting of the said Charles Bond and Clara F. Swaine, the latter being sometimes known as Clara F. Payer and Clara F. Dodson.

Defendant called Clara F. Dodson as a witness, and from her adduced evidence to the effect that under date of January 31, 1946 the bankrupt, now deceased, and she (then known as Clara Swaine) signed an agreement which is in evidence and which sets forth that the parties thereto shall, "as partners", engage in the business of buying, selling and dealing in radio sets, radio equipment, electrical appliances and real estate. This document, the body of which is in typewriting, provides: "The name of the partnership shall be", followed by a blank space which was never filled in. By the terms of this agreement, the partnership was to begin on February 1, 1946 and to continue "indefinitely". The agreement provides that the "second party [Clara Swaine] shall contribute the sum of $37,700 towards the capital of the business and shall not be required to contribute any work. She shall be a silent partner". That document further provides that full and true accounts of the transactions of the partnership "shall be kept in proper books", which shall be kept at the place of business "of the partnership" and each party shall at all times have access to and may inspect any of them. The amount fixed as Clara Swaine's contribution, i. e., $37,700, it has been stipulated, had been "loaned" by her to the bankrupt prior to the date of the document above described.

All the payments involved and claimed to have been preferential were made by checks to the order of defendant, each on a form bearing at the top, somewhat to the left, the printed words "Bond Radio Service, 518 Madison Ave." and at the bottom to the right the printed words "Bond Radio Service". Below this last printed legend the bankrupt signed his name, "Chas. Bond", in ink.

It is stipulated that no trade name or partnership certificate relating to "Bond's Radio Service" or "Bond Radio Television" was filed in the County Clerk's office, except one dated June 25, 1946, filed by the bankrupt for the conduct of business under the name of "Bond's Radio Service" at 152 East 53rd Street, New York City, and one dated August 19, 1947, filed by the bankrupt for the conduct of business as "Bond Radio Television" at 518 Madison Avenue, New York City. It is stipulated further, that the books of account and records found in bankrupt's possession, and now held by plaintiff, cover the transactions of "Bond's Radio Service", located at 152 East 53rd Street, New York City, and "Bond Radio Television", located at 518 Madison Avenue, New York City, from January 1, 1945 to the date of bankruptcy of plaintiff's bankrupt, except that certain of said books were not kept up to date; that said books contained no account entitled "Capital Account" or "Drawing Account" in any name other than that of Charles Bond, the bankrupt; that moneys paid by Clara F. Swaine to Charles Bond "are shown in such books of account on a debtor/creditor basis"; that prior to February 1, 1946 Clara F. Swaine "loaned" the bankrupt $37,700; that she subsequently "loaned" him sums aggregating an additional $59,300; and that the bankrupt delivered to her "his promissory note for each such loan". It is also stipulated that on or about January 1, 1948, the bankrupt gave Clara F. Swaine his note for $97,000, "representing the aggregate of all notes theretofore given". It is further stipulated that income, sales, withholding and other tax returns relating to "Bond's Radio Service" and "Bond Radio Television" might be received in evidence without objection by defendant. Such returns were introduced, and they show that the bankrupt reported on all occasions that the business conducted at 152 East 53rd Street and at 518 Madison Avenue were his personal ventures. None of these returns makes any reference to a partnership.

The witness Dodson testifies that the partnership between her and the bankrupt referred to in the written agreement be-

tween them never came into being or operated. It is claimed by defendant that this testimony was inadmissible under Section 347 of the New York Civil Practice Act, the witness being a person in whose favor a claim against the bankrupt has been allowed in the sum of $97,000 and, therefore, interested in seeing the estate of the bankrupt augmented by a recovery herein.

Before any objection was made either to the competency of Mrs. Dodson as a witness or to the competency of her testimony, she gave evidence, none of which is contradicted, to the effect that, the document notwithstanding, she and the bankrupt never operated as partners and that the business conducted by the bankrupt was not one in which she was a partner; that after the execution of said document she continued, as before, to lend the bankrupt money from time to time, and the relationship between them continued, as before, to be that of debtor and creditor, not copartners.

Thus Mrs. Dodson testified, without objection, that the bankrupt had been the janitor of the house in which she lived; that he went into the radio business; that he engaged in business at 152 East 53rd Street as "Bond's Radio Service" and at 518 Madison Avenue as "Bond Radio Television"; that her first loan to him was made to enable him to pay off certain creditors he then had, and that thereafter she loaned him money from time to time while he was in business; that she had no legal advice in connection with the execution of the so-called partnership agreement; that he produced it and told her he was giving it to her as a favor to her, that it was added security and protection for her loans and that it would absolve her from any liability; that she executed the document "at his store" on East 53rd Street; that after the execution of it she stopped in and talked with him on occasion but did not discuss the conduct of the business with him; that he continued to ask her to lend him additional moneys, which she did, for the loan of which he agreed to, and did, pay her interest; that he told her that at some later date he would organize a corporation and give her stock for her advances to him, but that he never did so.

■ At this point the witness was asked: "Was there any talk as to the prior business, whether the partnership was functioning or not", and she answered "I asked him about the rest of the business. He told me that the partnership had never been activated, that he always operated as a proprietor and that now he would never activate it, no one would ever know anything about it". It was then, and not until then, that objection was made on the ground that the testimony was incompetent under N.Y.C.P.A. § 347. After some colloquy, defendant moved to strike out "all testimony as to conversations with the deceased bankrupt". Decision on that motion was reserved. I now deny it as having come too late to be effective as against testimony previously given without objection, although, even if the motion were granted as to the specific question following the answer to which the objection was made, there would still be no evidence that the partnership ever did function and there would be uncontradicted evidence, which I accept as true, that it never did.

Following the aforesaid objection, motion and ruling, the cross-examination of Mrs. Dodson continued, and in the course thereof plaintiff introduced a series of checks given by Mrs. Dodson to the bankrupt and cancelled promissory notes given by the bankrupt to Mrs. Dodson between February 1946 and October 16, 1947. Each of these notes, it is stipulated, was given to evidence a "loan" by Mrs. Dodson to the bankrupt. Finally there was introduced the bankrupt's note to Mrs. Dodson for $97,000, dated January, 1948 "representing" as stipulated "an aggregate of all notes theretofore given", which explains the "cancelled" notation on the earlier ones. The witness testified that the $97,000 note included "all moneys that [she] loaned to Mr. Bond * * * from the very beginning to the end". The notes were objected to by defendant's counsel solely on the ground "We have already stipulated that the witness advanced certain sums to Mr. Bond and we have the total amount of

those sums"—referring to the stipulation which fixes the total at $97,000. The only other objection to any of the foregoing testimony was on the ground that it was "immaterial".

Notwithstanding the execution of of the so-called partnership agreement, it would not follow, in the absence of proof, that the partnership projected by that instrument ever did, in fact, come into being or operate, either *inter se* or as to third parties, and in view of the way in which the question reaches this Court, the burden of establishing that fact is on defendant.

Defendant has not met that burden. There is no evidence that the partnership ever came into existence or operated, or that the moneys paid to defendant came from a partnership; on the other hand, between the oral testimony and the stipulated facts, many of which facts are strongly corroborative of the oral testimony, there is sufficient evidence, apart from that which was objected to under Section 347, to satisfy the Court that no partnership ever came into being between the bankrupt and Clara F. Swaine. Further, even if the agreement be taken as some evidence of the intent of the parties as between themselves to form a partnership, in the light of all the evidence it cannot be found that either party had such an intention.

Although it is not material to the conclusion reached, it is interesting to note that defendant concedes that at the time it extended credit to and transacted business with the bankrupt it was not aware of the alleged partnership. Defendant, therefore, makes no claim of partnership by estoppel.

It is, accordingly, held that the defense that the payments involved in the action were made by a partnership, and not by the bankrupt individually, is without merit, and that defense is dismissed on the merits.

The findings of fact and conclusions of law herein stated are sufficiently specific. If more is desired, specific findings of fact and conclusions of law consistent herewith may be submitted for consideration.